**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

APRIL D. SPEARS,

      Plaintiff,                      CIVIL ACTION NO. 13-13905

   v.

                                    DISTRICT JUDGE PAUL BORMAN
                                    MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

      Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant

**GRANTED**, as there is substantial evidence on the record that claimant retained the residual

functional capacity for a full range of light work, including her past jobs as a driver and

security monitor.

**II.    REPORT**

    **A.    Introduction and Procedural History**

      Plaintiff filed applications for Social Security Disability Income Benefits (DIB) and

Supplemental Security Income (SSI) benefits on October 20, 2010, alleging that she had been

disabled and unable to work since January 6, 2010, at age 48, due to fibromyalgia, sleep

apnea, intestinal problems, leg pain and emotional difficulties. Benefits were initially denied by the Social Security Administration (SSA). A requested de novo hearing was held on February 29, 2012, before Administrative Law Judge (ALJ) Paul Armstrong. The ALJ subsequently found that the claimant was not entitled to disability benefits because she retained the ability to perform a full range of light work, including her past jobs as a driver and security monitor. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Claimant was nearly 50 years old at the time of the administrative hearing (TR 51). She has an eleventh grade education, and had been employed as a direct care worker, driver/referral specialist, dietary aide, security monitor worker and nail technician (TR 67, 91). Claimant stopped working in January 2010, due to progressively worsening joint pain, depression and anxiety (TR 54).

Plaintiff alleged that she remained disabled as a result of a myriad of impairments, including fibromyalgia, restless leg syndrome, chronic reflex sympathetic dystrophy, sleep apnea, carpal tunnel syndrome, intestinal difficulties, chronic depression and frequent panic attacks (TR 25, 52-55, 70-74). Claimant testified that the combination of her physical and mental impairments prevented her from working on a sustained basis. She testified that she was unable to concentrate, focus, or pay proper attention to work instructions (TR 55-58).

Plaintiff insisted that she could not complete a normal work week without significant interruptions or absences (TR 86-88).

A Vocational Expert, Michelle Peters, classified Plaintiff's past work as light to heavy, semi-skilled activity (TR 91). The witness testified that there would not be any jobs for claimant to perform if her testimony were fully accepted[1] (TR 94). If she were capable of a full range of light work, however, she could return to all her past relevant work, except for the direct care position (TR 92-93). She could also perform other jobs existing in the national economy.  The witness indicated that there were numerous informational clerking type jobs and inspection positions that she could still perform with minimal vocational adjustment (TR 93-94).

### B.    ALJ's Findings

The Administrative Law Judge found that Plaintiff was impaired as a result of fibromyalgia, residual pain from a left ankle sprain and a possible small avulsion fracture, but that she did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ determined that the claimant retained the residual functional capacity for a full range of light work activity (TR 33). The ALJ  found that claimant's past relevant work as a driver/referral specialist and security monitor did not require the performance of work related activities precluded by her residual functional capacity (TR 41).

---

[1] The witness testified that claimant's alleged need to take frequent breaks, lasting up to 15 minutes out of every hour, throughout the day due to her joint pain would preclude all work activity (TR 94).

3

**C.    Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff maintains that substantial evidence does not exist on the record that she remains capable of performing a full range of light work activity. She also argues that the

4

ALJ improperly evaluated her credibility, and did not take into consideration all the functional limitations stemming from her multiple impairments[2]. Defendant counters that the claimant retains the residual functional capacity for a full range of light work because the objective clinical evidence of record did not confirm the disabling nature of her joint pain or mental difficulties.

### D.   Discussion and Analysis

After review of the record, I suggest that substantial evidence exists on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a full range of light work activity. Contrary to Plaintiff's assertion, the medical evidence does not support her allegations of totally disabling joint pain or mental depression.

The medical record contains little objective medical basis for crediting Plaintiff's complaints of disabling symptoms related to fibromyalgia or carpal tunnel syndrome. Claimant has never been hospitalized, nor has she received aggressive treatment for either condition.   Examining physicians reported no significant abnormalities.   One treating physician, Dr. Prit Bhardwaj, observed that the claimant could frequently perform reaching, handling, fingering and feeling (TR 657).  Dr. Joel Shavell, another treating doctor, believed

---

[2]Contrary to Plaintiff's allegations, I suggest that she received a fair and impartial hearing before the ALJ. Plaintiff's argument is merely that of ALJ bias. It is presumed that judicial and quasi-judicial officers, including ALJs, carry out their duties fairly and impartially. See Bailey v. Commissioner, 413 F.Appx. 853, 856 (6th Cir. 2011).  The party asserting bias has the burden to overcome this presumption, which she can do only with "convincing evidence that a risk of actual bias or prejudgment is present." Id.; (citing Navistar Int'l Transp. Corp. v. E.P.A., 941 F.2d 1339, 1360 (6th Cir.1991). The ALJ examined the record and investigated the issues during the hearing.  The hearing was thorough, lasting almost one hour and a half. The ALJ conducted himself appropriately by questioning Plaintiff regarding the pertinent issues, and offered claimant's counsel the opportunity to question his client and the vocational expert (TR 48-99). I am unable to discern evidence of bias in this case.

that when Plaintiff took her mind off her hand, she was able to use the hand quite well (TR 545).   Dr. Shavell reported that all clinical testing were negative, and that the lack of significant findings made further evaluation unnecessary (TR 545).

A consulting examiner, Dr. Elizabeth Edmond, indicated that Plaintiff could make a fist, and that her  grip strength  was nearly normal (TR 464). Dr. Edmond stated that the claimant could perform finger-to-finger, nose-to-nose, and rapid hand movements (TR 465). The doctor concluded that Plaintiff retained the dexterity to button, write, pick up a coin and tie her shoes (TR 465). As the ALJ noted, the claimant was actually diagnosed with carpal tunnel syndrome prior to her alleged onset date of disability. Nevertheless, she was still able to perform substantial gainful activity with the help of medications (TR 26, 28).

The record indicates that Plaintiff obtained significant relief from medications taken as prescribed (TR 295), and the medical record contains no evidence of significant side-effects from those medications. Significantly, no doctor declared her to be totally and permanently disabled. While the subjective nature of fibromyalgia does not usually lend itself to objective medical verification, the ALJ did not rely solely on the lack of objective medical support in determining that Plaintiff was not disabled.  Despite allegations that she suffered from severe pain radiating throughout her body, the claimant was able to perform such daily activities as cooking, laundry, driving, and playing a variety of board and video games (TR 459). Such activities undermine her claim that the fibromyalgia or carpal tunnel syndrome were severe enough to be disabling.

With respect to claimant's alleged mental impairments, the ALJ reasonably determined that she did not have severe depression and/or anxiety (TR 29-31). As the ALJ discussed, treatment records from Eastwood Clinic and the Guidance Center, where Plaintiff received the majority of her mental health care, did not indicate a diagnosis of anxiety (TR 29, 345-49, 522-25, 599-634). While she was diagnosed with depression, the record reveals that her symptoms improved with treatment. Plaintiff was determined to have a Global Assessment Score (GAF) of 55, indicating no more than moderate symptoms or limitations (TR 29, 523).

A consultative psychologist, Hugh Bray, Ph.D., interviewed claimant in January 2011 (TR 445-61). Notably, Plaintiff reported that her physical problems, not her mental condition, prevented her from working (TR 457-58). Claimant also told the interviewer that she got along with her family, neighbors, friends, employer and co-workers (TR 459). A mental status examination showed that she was cooperative, talkative, and responsive (TR 460). She had good insight and judgment, no unusual or bizarre behaviors, intact reality, and remained logical and goal-directed. Despite being teary eyed, her mood was pleasant and friendly (TR 460).

Dr. Bray diagnosed an adjustment disorder with anxiety and depressed mood (Tr. 460). He opined that Plaintiff was only mildly impaired in her ability to relate to others; was only mildly impaired in her ability to understand, remember and carry out tasks; could perform simple repetitive tasks; had minimal difficulty in performing multiple step tasks; was only mildly impaired in her ability to maintain attention, concentration, persistence and

pace; and was only mildly impaired in her ability to withstand stress and pressure associated with day-to-day work activities (TR 461).

Contrary to Plaintiff's assertion, the issue is not whether the ALJ properly labeled her impairments as severe or non-severe, but whether the Administrative Law Judge properly took into consideration any functional limitation stemming from those impairments into his residual functional capacity (RFC) evaluation. In the instant case, the claimant has failed to point to any medical opinion, or other evidence demonstrating work-related limitations, ignored by the Administrative Law Judge.

Plaintiff relies heavily upon the fact that her treating psychiatrist, Dr. Sunil Koneru, opined in June 2011, that she had poor to no ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, or maintain attention and concentration (TR 527-528). It is well settled that opinions of treating physicians should be given greater weight than those of one-time examining doctors retained by the government. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). However, the opinion of a treating physician is entitled to deference only if his clinical findings are uncontradicted by substantial medical or other evidence, and if the opinion is based on detailed, clinical, diagnostic evidence. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Since Dr. Koneru offered little objective evidence during the relevant period to support his June 2011, statement of disability[3], his opinion need not have

---

[3]The ALJ rejected the doctor's disability opinion, setting forth persuasive reasons for doing so (TR 31). The ALJ expressed concern about the lack of medical documentation to support the opinion. As the ALJ noted, the record did not reflect the degree of limitation indicated in Dr. Koneru's forms (TR 31). Indeed,

been given any special weight.  Miller v. Secretary, 843 F.2d 221, 224  (6th Cir. 1988).

Under these circumstances, the totality of the evidence must be considered.  Landsaw v.

Secretary, 803 F.2d  211, 213 (6th Cir. 1986).

It is the rare case, indeed the exception, in which every piece of evidence points

incontrovertibly toward a decision to deny benefits. There was evidence in the record which,

taken in isolation, might suggest that the Plaintiff was totally disabled and that her testimony

was fully credible. However, special deference is owed to the credibility findings of the ALJ,

who was the only one who had the opportunity to observe the demeanor of the witness,

evaluate what was said and how it was said, and to consider how that testimony fit in with

the rest of the medical evidence. Such observation is invaluable and should not be discarded

lightly.  Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978).  See also Williamson v.

Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

Once it is determined that an applicant can perform past relevant work, she is deemed

not disabled and there is no need for the testimony of a vocational expert.  Orick v. Sullivan,

966 F.2d 368, 372 (8th Cir. 1992). The Sixth Circuit has ruled that a claimant can be denied

benefits if she remains capable of returning to her former type of work, even if she cannot

---

Plaintiff's daily activities negate Dr. Koneru's opinion. An individual with poor-to-no ability in all areas, would not be expected to lived independently, do laundry, cook simple meals, drive, attend church, run errands, shop, read, watch television, visit others, and play board, card and video games (TR 459). Dr. Koneru failed to identify supporting evidence for his  opinion.  The forms completed by Dr. Koneru contained no detailed explanation to support the conclusion that Plaintiff was more limited beyond the ALJ's residual functional capacity finding.  Similarly, the ALJ properly did not give any weight to Dr.  Bhardwaj's January 2012 opinion because it was an unsupported checklist form (TR 41).  Such forms with no supporting explanation or detailed examination notes are not persuasive evidence.

return to the actual job held in the past.  Studaway v. Secretary, 815 F.2d 1074, 1076 (6th

Cir. 1987).  A vocational expert testified at the hearing that Plaintiff could return to all her

past relevant work, except for the direct care position, provided that she remained physically

capable of light work (TR 92-93).  Since Plaintiff's past work as an driver/referral specialist

and security monitor[4] was consistent with that level of exertion, substantial evidence existed

on the record that she was not disabled within the meaning of the Social Security Act.

In sum, the Commissioner's decision to deny benefits was within the range of

discretion allowed by law and there is simply insufficient evidence for the undersigned to

find otherwise.  Accordingly, Plaintiff's Motion for Summary Judgment should be denied,

that of Defendant granted and the instant Complaint dismissed.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy

hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes

a waiver of any further right of appeal.  United States v. Walters, 638 F.2d 947 (6th Cir.

1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th

Cir. 1991).  Filing of objections which raise some issues but fail to raise others with

---

[4]Claimant attempts to deny that her security position was substantial gainful activity (SGA)(See Plaintiff's Brief in Support of Motion for Summary Judgment at p.21). SGA is work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 404.1572(a),(b). A person who is earning more than a given monthly amount is ordinarily considered to be engaging in SGA.  Plaintiff reported that she made $5.50 per hour, working 8 hours per day and 5 days per week(or $880 in 4 weeks which is approximately a month) (TR 213).  Therefore, her work as a security guard qualified as SGA because it met the earnings amounts for 1999.

specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

  s/ Charles E Binder

CHARLES E. BINDER
United States Magistrate Judge

Dated: September 29, 2014

11